Kenneth M. DucDuong (*pro hac vice* pending)
KMD LAW OFFICE, LTD.
4001 W. Devon Ave., Suite 332
Chicago, IL 60646
Telephone: 312.997.5959
Facsimile: 312.219.8404
E-mail: kducduong@kmdlex.com

Peter R. Nasmyth, Jr.
LAW OFFICE OF PETER R. NASMYTH, JR., APC
269 W. Bonita Ave., Suite C
Claremont, CA 91711
Telephone: 909.626.4157
Facsimile: 909.482.1088
Email:  prnlaw@msn.com

***Attorneys for Plaintiff***

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| VAN DUONG, an individual,<br>Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA, N.A., a<br>North Carolina corporation;<br>and DOES 1-20,<br>Defendants. | No.  1:18 CV 2728<br><br>**COMPLAINT FOR:**<br><br>1. **BREACH OF CONTRACT**<br>2. **CONVERSION**<br>3. **NEGLIGENT INFLICTION OF EMOTION DISTRESS**<br>4. **INTENTIONAL INFLICTION OF EMOTION DISTRESS**<br>5. **NEGLIGENCE *PER SE*; GROSS NEGLIGENCE**<br>6. **VIOLATION OF BUSINESS & PROFESSIONS CODE §17200** |

## COMPLAINT

Plaintiff, Van Duong, by and through her attorneys, Kenneth M. DucDuong of

Initial Complaint against Bank of America – 1

KMD Law Office, Ltd., and Peter R. Nasmyth, Jr. of Law Offices of Peter R. Nasmyth, Jr.,

and for her complaint against defendants, Bank of America, N.A. and John Does 1-20,

pleading hypothetically and in the alternative, states and alleges as follows:

### NATURE OF COMPLAINT

1.      This action relates to the continuing conduct of Bank of America

("Bank") in connection with its operation of safe deposit boxes. This is not an

isolated incident where Bank lost valuable items belonging to its customers in its

safe deposit boxes. Rather, there have been numerous news reports that this kind of

conduct, as alleged herein, is and has been part of Bank's business practices – its

total disregard of the rights of its customers. See, e.g.,

https://youtu.be/2NXLT39Xerk ("Customers Complain BofA Drilling Safe Deposit

Boxes & Losing Valuables") (last access May 2, 2018);

http://sanfrancisco.cbslocal.com/2017/05/06/customers-complain-bofa-is-drilling-

safe-deposit-boxes-and-losing-valuables/ (last access May 2, 2018);

https://patch.com/california/shermanoaks/bank-ordered-pay-sherman-oaks-

woman-whose-safe-deposit-box-was-looted (last access May 2, 2018).

2.      In 2012, Bank drilled its customers' safe deposit box and lost valuable

items belong to the customers:

http://sanfrancisco.cbslocal.com/2012/04/27/consumerwatch-heirlooms-

disappear-from-bofa-safety-deposit-box/ (last access May 2, 2018)

3.      In fact, as recent as in January 2018, another news report shows Bank's

substantially similar conduct, as further alleged herein:

Initial Complaint against Bank of America - 2

https://www.10news.com/news/south-bay-grandmother-said-valuable-jewelry-missing-from-safe-deposit-box (last access May 2, 2018).

4.      These are just a few examples of Bank's conduct.

**PARTIES**

5.      Plaintiff is a natural person residing within County of Santa Clara, California and this District. Plaintiff is a citizen of the State of California.

6.      Bank of America is a federally chartered national bank association, headquartered in the state of North Carolina. Bank conducts business throughout the United States, including in the County of Santa Clara, California. Bank is a citizen of North Carolina.

7.      Plaintiff does not know the true identities of Does 1-20, whose identities are known to Bank based on the nature of business and practices and within Bank's possession. Does 1-20 are contractors, former and current employees of Bank, and other third parties with whom Bank contracted and conducted its business. On information and reasonable belief, Does 1-20 are responsible for the conduct as alleged herein, and therefore are liable to Plaintiff. When the true names and nature of Does 1-20 have been ascertained, through discovery or otherwise, Plaintiff will seek leave from the court to amend the Complaint accordingly, as appropriate.

**JURISDICTION AND VENUE**

8.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a) because the dispute between the parties is over $75,000 and there exists diversity

between Plaintiff and Bank because Plaintiff and Bank are citizens of different states. This Court has supplemental jurisdiction over California state law claims pursuant to 28 U.S.C. § 1367(a).

9.    Venue is proper in this District because the action, omission or failure to act by Bank, as alleged herein, occurred within this District.

## FACTS

10.    As part of its regular business, Bank routinely make safe deposit boxes available to the general public, including Plaintiff, for a fee. The purpose of Bank's safe deposit boxes, among others, are to permit the general public like Plaintiff, to store personal items of sentimental or monetary values, including heirlooms and jewelries, so that the stored items will be safeguarded from theft or destruction.

11.    Bank regularly touted that its safe deposit boxes in Bank's deposit vault are the safest place to secure valuables and irreplaceable heirlooms and personal items. As a result, customers, including Plaintiff, make a decision to pay Bank a fee to obtain a safe deposit boxes for their peace of mind.

12.    Bank knew or should have known because of its advertising and representations that customers, like Plaintiff, regularly and routinely store their personal valuable items including jewelry and heirlooms in Bank's safe deposit boxes.

13.    On July 22, 2009, Plaintiff obtained a safe deposit box at Bank and paid an annual fee. The safe deposit box account number was 1151000014D6 ("Box 14D6"). Box 14D6 was located at Bank's branch at 971 Blossom Hill Road, San Jose,

Initial Complaint against Bank of America - 4

California (Branch #318, Center 1151) (the "Blossom Hill-Winfield Location").

14.     As part of renting Box 14D6, Plaintiff was required to sign a rental agreement (the "Agreement"), which provides certain rules and procedures, among other things, that Bank may only relocate or "drill" Box 14D6 upon prior notice to Plaintiff.

15.     At all times relevant to this action, Plaintiff maintained current information with Bank.

16.     At all times relevant to this action, Bank had current information of Plaintiff, including her current telephone numbers and e-mail address(es).

17.     Between 2009 and 2017, Plaintiff timely and fully paid the fees for the safe deposit box, which fees were paid directly to Bank by automatic withdrawals from Plaintiff's bank accounts that she maintained with Bank.

18.     Between 2009 and 2017, Plaintiff fully performed all of her duties and obligations under the Agreement and has complied with all of its conditions.

19.     At all times relevant to this action, Plaintiff was the sole owner and renter of Box 14D6.

20.     At all times relevant to this action, Plaintiff stored her personal valuable items in Box 14D6 in reliance with Bank's representations that said personal valuable items would be protected and secure.

21.     Plaintiff stored and maintained her personal and valuable items in Box 14D6, including but not limited to, her family jewelries, heirlooms, collectibles, documents, and other personal and extremely valuable items. Moreover, some of

Initial Complaint against Bank of America - 5

these items have been passed down from generation to generation with significant

sentimental value.

22.     On or about November 24, 2015, Bank requested Plaintiff to provide

certain allegedly "missing" personal contact information. The allegedly "missing"

information that Bank requested was the same information Bank already had in the

Agreement. Nevertheless, on December 17, 2015, Plaintiff complied and provided

Bank with all of the requested "missing" information.

23.     On information and belief, Bank drilled open Plaintiff's Box 14D6 on

July 15, 2016.

24.     Prior to July 15, 2016, Bank never notified Plaintiff, by telephone, e-

mail, mail, or otherwise, that Box 14D6 would be drilled open.

25.     Prior to July 15, 2016, Bank never notified Plaintiff, by telephone, e-

mail, mail, or otherwise, that the contents of Box 14D6 would be removed and

shipped to an unknown location.

26.     Prior to July 15, 2016, Bank never requested Plaintiff be present when

Box 14D6 would be drilled so that she could collect her personal items and to ensure

nothing would be lost.

27.     On information and belief, Bank drilled open multiple safe deposit

boxes, including Plaintiff's on July 15, 2016. As part of its regular business practice,

Bank routinely scheduled the drilling of multiple safe deposit boxes (like Plaintiff's)

in one location at once in order to save money. Further, as part of its regular business

practice, Bank did not notify its customers of the date their safe deposit boxes would

actually be drilled open in an attempt to interfere and thwart its customers' effort to protect their valuables in their safe deposit boxes.

28.    Between July 15, 2016 and February 21, 2017, Bank never notified Plaintiff that her Box 14D6 had been drilled and the contents removed on July 15, 2016.

29.    Instead, some seven month later, on or about February 22, 2017, Bank mailed a letter notifying Plaintiff that Box 14D6 had been drilled open.

30.    Upon receipt of Bank's February 22, 2017 letter, on March 3, 2017, Plaintiff went to Bank's Blossom Hill-Winfield location and inquired about the drilling of Box 14D6. There, Plaintiff spoke with Julie Eaton, a financial center manager at Bank, and Janet Custodio, another manager at Bank, who then informed Plaintiff that her Box 14D6 had been drilled open some seventh months prior, July 15, 2016.

31.    This was the first time—March 3, 2017—that Plaintiff was told about the drilling of Box 14D6 occurred on, allegedly, July 15, 2016.

32.    On the same day, March 3, 2017, Ms. Eaton told Plaintiff that her Box 14D6 was drilled open because of her failure to pay the required fees, i.e., $213.00, as indicated in the Safe Deposit Box Inventory Certificate (the "Inventory Certificate"). Later, Bank told Plaintiff that Plaintiff in fact did ***not*** owe Bank any rental fees as Bank executed automatic withdrawals from Plaintiff's bank account for the fees and had been fully paid.

33.    Bank then changed its narrative and told Plaintiff that it had drilled Box

14D6 because of certain "missing" information. However, Bank refused to tell Plaintiff what "missing" information that it did not have that caused it to drill Box 14D6.

34.     Bank also refused to inform Plaintiff, among other things, (1) how the contents were shipped, (2) where the contents were shipped to and the location of the storage, (3) the name and contact information of the company (or contractor) that drilled Box 14D6, (4) the name and contact information of the company (or contractor) that shipped Plaintiff's contents, and (5) whether the shipment of the contents was insured against potential loss.

35.     On that same day, March 3, 2017, Plaintiff informed Bank the content of her Box 14D6 worth tens and hundreds of thousands of dollars and requested that her personal valuable items be shipped back to the Blossom Hill-Winfield location for inspection. Plaintiff further requested that her valuable items be shipped *fully* insured. Bank refused, stating that in according to its policies, it never shipped the contents of safe deposit boxes insured no matter how valuable they were or even if they were specifically requested by customers.

36.     On information and belief, Bank shipped Plaintiff's valuable contents of Box 14D6 uninsured.

37.     On April 4, 2017, Plaintiff returned to Bank's Blossom Hill-Winfield location and inspected the return of the contents of her Box 14D6 alongside with Bank's employees. Ms. Eaton and Ms. Custodio was present with Plaintiff at the time of the inspection. Plaintiff was in complete shock and distressed when she

discovered that certain very valuable items were missing and the Safe Deposit Box Inventory Certificate (the "Inventory Certificate") of Box 14D6 was inaccurate and incomplete. For example, the Inventory Certificate indicated that Plaintiff owed Bank $213.00 when she in fact did not owe any rental fees to Bank. Plaintiff's certain personal and valuable items that were in Box 14D6 were not listed in the Inventory Certificate. Certain other items were mishandled and damaged.

38.     On that same day, April 4, 2017, Plaintiff informed Bank's employees, including Ms. Eaton and Ms. Custodio that certain items of Box 14D6 were missing.

39.     Nevertheless, Bank's employees insisted that Plaintiff sign the Inventory Certificate acknowledging that nothing was missing and releasing Bank from liability for lost items. Plaintiff refused. Bank acknowledged Plaintiff's refusal and acknowledged that certain items of Box 14D6 were missing.

40.     In July of 2017, Plaintiff completed an affidavit of loss claim and provided Bank with a list of lost items along detailed description of the lost items. The total estimated market value of the lost items were over $4 million. Bank received Plaintiff's claim of loss shortly thereafter.

41.     Bank lost, misplaced, converted, or otherwise cannot account for lost items that were store in Plaintiff's Box 14D6.

42.     Despite having current contact information of Plaintiff, Bank failed to properly inform Plaintiff that her Box 14D6 would be drilled and to allow Plaintiff to be present at the time of the drilling.

43.     Plaintiff conducted business and maintained, and is still maintaining,

Initial Complaint against Bank of America - 9

bank accounts with Bank for over more than 20 years and during all times relevant to this action. During all of these years, Plaintiff maintained the same information, including her contact information with Bank.

44.     Bank had the means and opportunity to communicate to Plaintiff regarding Box 14D6. Yet Bank failed to timely and properly communicate with Plaintiff in any meaningful way in an attempt to deprive Plaintiff of her property.

45.     On July 15, 2016 Bank drilled Plaintiff's safe deposit Box 14D6 but waited for over seven (7) months before notifying her on February 22, 2017 that it had drilled and removed the contents of Box 14D6.

46.     At the time Bank drilled Box 14D6 on July 15, 2016, Bank was fully paid, and Plaintiff did pay, all rental fees as Bank executed automatic withdrawals from Plaintiff's bank account for the fees. As such, Bank had no reason to drill Box 14D6.

47.     At the time Bank drilled Box 14D6 on July 15, 2016, Bank had full and complete information of Plaintiff. As such, Bank had no reason to drill Box 14D6.

48.     On July 15, 2016, Bank had no basis, in law or otherwise, to drill Box 14D6.

49.     Bank drilled Box 14D6 on July 15, 2016, in violation of the Agreement.

50.     As a result of Bank's acts or failure to act, Plaintiff has been permanently deprived of her valuable and irreplaceable items, including but not limited to jewelry and heirlooms.

51.     Plaintiff has been actually damaged in excess of the jurisdictional amount of this Court, to be proved at hearing or trial.

# FIRST CAUSE OF ACTION
## (Breach of Contract)

52.     Plaintiff re-alleges, re-states, and incorporates by reference paragraphs 1 through 51 in this paragraph.

53.     On September 22, 2009, Plaintiff opened a safe deposit box – Box 14D6 – at Bank and execute a Rental Agreement with Bank.

54.     Plaintiff timely paid her rental fees for Box 14D6 as they came due and owed to Bank. Bank did automatic withdrawals directly from Plaintiff's bank account for the payments and was fully paid.

55.     At all times relevant to this action, Plaintiff conducted business at Bank including maintaining bank accounts with Bank. As such Bank readily had current contact information of Plaintiff and could communicate with Plaintiff.

56.     On July 15, 2016, Bank drilled safe deposit Box 14D6.

57.     Inherent in every contract, including the Agreement, is an implied covenant of good faith and fair dealing among the contracting parties. This implied covenant of good faith and fair dealing requires that the contracting parties such as Plaintiff and Bank, will do nothing to impair the rights of the other parties to receive the benefits of the bargain and that each party will do everything that the contract presupposes it will do to accomplish its purpose, and that each party will perform its contractual obligations with care, skill, and reasonable expedience, and good faith.

58.     Plaintiff has fully performed all of her duties and obligations under the Agreement, and has complied with all of its conditions.

59.     Under the Agreement, Bank has a contractual obligation and an expectation, along with an express duty to, *inter alia*, maintain and secure safe deposit boxes, including Box 14D6.

60.     Bank breached the Agreement and its covenant of good faith and fair dealing by, *inter alia*, (1) failing to exercise ordinary care to maintain and preserve valuable items belonging to Plaintiff; (2) by losing, misplacing, converting, damaging, or otherwise, unable to account for Plaintiff's valuables after removing them from Box 14D6; (3) by failing to provide Plaintiff with prior notice before drilling Box 14D6 open and removing its contents despite having Plaintiff's contact information.

61.     Because of Bank's breach of the Agreement, Plaintiff lost valuable and irreplaceable personal items and therefore suffered damages.

62.     Pursuant to the Agreement, Plaintiff is entitled to attorneys' fees and costs against Bank.

## SECOND CAUSE OF ACTION
### (Conversion)

63.     Plaintiff re-alleges, re-states, and incorporates by reference paragraphs 1 through 51 in this paragraph.

64.     On information and belief, Bank converted items from Plaintiff's Box 14D6 for its own use, and thereby permanently deprived Plaintiff the right to her properties.

65.     Bank wrongfully interfered with Plaintiff's property interest to the items stored in Box 14D6 by diverting to its own use and refusing to properly

account for and delivered said items to Plaintiff.

66.     As a result of Bank's conduct, Plaintiff has been damaged in excess of the jurisdictional amount of $75,000, to be proved at trial.

67.     Bank's conduct, as alleged herein, amounts to oppression, fraud, malice, and in conscious disregard of Plaintiff's property rights.

68.     Therefore, Plaintiff is entitled to an award of punitive or exemplary damages in an amount to be proved at hearing or trial.

## THIRD CAUSE OF ACTION
## (Negligence)

69.     Plaintiff re-alleges, re-states, and incorporates by reference paragraphs 1 through 51 in this paragraph.

70.     By virtue of the obligations, imposed by laws or contract under the Agreement and the relationship between Bank and Plaintiff, Bank owed Plaintiff a duty of good faith and fair dealing and a duty to act with ordinary and reasonable care, to safeguard and secure Plaintiff's interests in Box 14D6.

71.     Bank has been negligent and breached its duties as to Plaintiff by its conduct, as alleged herein, including but not limited to, by failing to exercise ordinary and reasonable care for the preservation of Plaintiff's valuables in Box 14D6, by losing, misplacing, converting, damaging, or otherwise, being unable to account for Plaintiff's items that she stored in Box 14D6, and failing to provide Plaintiff with prior notice before Bank relocate and drill it open.

72.     As a direct and proximate result of Bank's act or failure to act, as alleged

herein, Plaintiff has suffered, and continues to suffer, damages in excess of the

jurisdictional amount of $75,000.

73.    Plaintiff cannot ascertain at this time the full nature, extent, and amount

of damages because of Bank's breach.

## FOURTH CAUSE OF ACTION
### (Negligence *per se*)

74.    Plaintiff re-alleges, re-states, and incorporates by reference paragraphs

1 through 51 in this paragraph.

75.    California Civil Code section 1838 provides: "If a thing is lost or injured

during its deposit, and the depositary refuses to inform the depositor of the

circumstances under which the loss or injury occurred, so far as he has information

concerning them, or willfully misrepresents the circumstances to him, the depositary

is presume to have willfully, or by gross negligence, permitted the loss or injury to

occur."

76.    As alleged herein, Bank lost, misplaced, or otherwise is unable to

account for Plaintiff's valuables that she deposited in Box 14D6.

77.    Bank refused, continues to refuse, to inform Plaintiff of the

circumstances under which the loss occurred, notwithstanding that Bank has

knowledge of information, or access to and control of the information, relating to the

loss.

78.    As such, Bank violated California Civil Code section 1838 and is

presumed to have willfully, or by gross negligence, permitted the loss to occur.

79.     Bank's negligence, and its violation of California Civil Code section 1838, were a substantial factor in causing Plaintiff's loss and to cause harm and damages, as alleged herein.

## FIFTH CAUSE OF ACTION
### (Negligent Infliction of Emotional Distress)

80.     Plaintiff re-alleges, re-states, and incorporates by reference paragraphs 1 through 51 in this paragraph.

81.     By virtue of the obligations, imposed by laws or contract under the Agreement and the relationship between Bank and Plaintiff, Bank owed Plaintiff a duty of good faith and fair dealing and a duty to act with ordinary and reasonable care, to safeguard and secure Plaintiff's interests in Box 14D6.

82.     Bank has been negligent and breached its duties as to Plaintiff by its conduct, as alleged herein, including but not limited to, by failing to exercise ordinary and reasonable care for the preservation of Plaintiff's valuables in Box 14D6, by losing, misplacing, converting, damaging, or otherwise, being unable to account for Plaintiff's items that she stored in Box 14D6, and failing to provide Plaintiff with prior notice before Bank relocate and drill it open.

83.     As a direct and proximate result of Bank's act or failure to act, as alleged herein, Plaintiff has suffered, and continues to suffer, damages in excess of the jurisdictional amount of $75,000 and has suffered, and continues to suffer, among other things, anxiety, stress, emotional and mental anguish, detriment to her health.

## SIXTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

84.     Plaintiff re-alleges, re-states, and incorporates by reference paragraphs 1 through 51 in this paragraph.

85.     By virtue of the obligations, imposed by laws or contract under the Agreement and the relationship between Bank and Plaintiff, Bank owed Plaintiff a duty of good faith and fair dealing and a duty to act with ordinary and reasonable care, to safeguard and secure Plaintiff's interests in Box 14D6.

86.     Bank has been negligent and breached its duties as to Plaintiff by its conduct, as alleged herein, including but not limited to, by failing to exercise ordinary and reasonable care for the preservation of Plaintiff's valuables in Box 14D6, by losing, misplacing, converting, damaging, or otherwise, being unable to account for Plaintiff's items that she stored in Box 14D6, and failing to provide Plaintiff with prior notice before Bank relocate and drill it open.

87.     Plaintiff has suffered, and continues to suffer, among other things, anxiety, stress, severe emotional and mental anguish, detriment to her health, as a result of Bank's conduct.

88.     Bank's conduct, as alleged herein, is extremely outrageous and with reckless disregard of Plaintiff's rights to her properties stored in Box 14D6. Bank knew or should have known, and did so with knowledge, that its conduct was likely to cause Plaintiff to suffer extreme emotional distress.

89.     As a direct and proximate result of Bank's extreme and outrageous act or failure to act, as alleged herein, Plaintiff has suffered, and continues to suffer, damages in excess of the jurisdictional amount of $75,000 and has suffered, and

1  continues to suffer, among other things, anxiety, stress, emotional and mental

2  anguish, detriment to her health.

3

4  ### SEVENTH CAUSE OF ACTION
   ### (Violation of Business Professions Code §17200)

5

6  90.    Plaintiff re-alleges, re-states, and incorporates by reference paragraphs

7  1 through 51 in this paragraph.

8  91.    Bank conducts its business throughout the United States and the state

9  of California.

10

11  92.    Bank has committed acts or unfair competition, as defined by California

12  Business and Professions Code section 17200, by engaging in the acts or practices, as

13  alleged herein.

14

15  93.    Bank's acts and business practices, as alleged herein, violate California

16  Business and Professions Code section 17200 and constitute unfair business acts and

17  practices within the meaning of said section.

18

19  94.    Bank's unlawful and unfair business acts and practices present a

20  continuing threat of harm to the general public, including Plaintiff.

21  95.    Unless ordered or enjoined by this Court, Bank will persist in its

22  activities, thereby causing further irreparable harm to the general public, including

23  Plaintiff, for which the general public and Plaintiff have no adequate remedy at law.

24

25  96.    By this complaint, Plaintiff seeks an order requiring Bank to make

26  restitution by restoring to Plaintiff all of the items in the Box 14D6, or the equivalent

27  value of same, and for Bank to disgorge all of it profit derived through the use of its

28

unlawful and unfair business practices, as alleged herein, pursuant to California

Business and Professions Code section 17203.

97.    Plaintiff also seeks an order for an award, against Bank, for

reimbursement of reasonable attorneys' fees and costs of suit, as permitted under

California Code of Civil Procedure section 1021.5.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Van Duong, respectfully requests the Honorable Court

for a judgment, in her favor and against Bank of America, N.A. and John Does 1-20, as

follows:

A.  For general damages in excess of $75,000 to be proved at trial;

B.  For special damages in excess of $75,000 to be proved at trial;

C.  For punitive or exemplary damages in an amount to be proved at trial;

D.  For reimbursement for reasonable attorneys' fees and costs of suit, as

permitted under the Agreement or laws, to be proved at trial; and

E.  For such other and further relief this Honorable Court deems just and

appropriate.

Dated: May 9, 2018                              Respectfully Submitted,


By: _____
One of Plaintiff's Attorneys



Counsel for Plaintiff:

Kenneth M. DucDuong (*pro hac vice* pending)

Initial Complaint against Bank of America - 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KMD LAW OFFICE, LTD.
4001 W. Devon Ave., Suite 332
Chicago, IL 60646
Telephone: 312.997.5959
Facsimile: 312.219.8404
E-mail: kducduong@kmdlex.com

Peter R. Nasmyth, Jr.
LAW OFFICES OF PETER R. NASMYTH, JR., APC
269 W. Bonita Ave., Suite C
Claremont, CA 91711
Telephone: 909.626.4157
Facsimile: 909.482.1088
E-mail:  prnlaw@msn.com

### DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that the defendant(s) takes affirmative steps to preserve all recordings, data, documents and all other tangible things that relate to plaintiff or the putative class members, the events described herein, any third party servicing special purpose accounts belonging to Plaintiff and members of the Class, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this claim.  This demand shall not narrow the scope of any independent document preservation duties of the defendant. Please contact the undersigned if you wish to discuss.

/s/Kenneth M. DucDuong
Kenneth M. DucDuong
One of Plaintiff's Attorneys

Counsel for Plaintiff:

Kenneth M. DucDuong (*pro hac vice* pending)
KMD LAW OFFICE, LTD.
4001 W. Devon Ave., Suite 332
Chicago, IL 60646
Telephone: 312.997.5959
Facsimile: 312.219.8404
E-mail: kducduong@kmdlex.com

Initial Complaint against Bank of America - 19